UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SHAQUAN L. ARMOUR,<br>    Plaintiff, | :<br>:<br>: |
| v. | :     No. 3:23-cv-1606 (MPS) |
| GOVERNOR LAMONT,<br>    Defendant. | :<br>:<br>:<br>: |

**INITIAL REVIEW ORDER**

The plaintiff, Shaquan Armour, a sentenced inmate in the custody of the Department of Correction ("DOC") housed at Garner Correctional Institution, is proceeding as a self-represented party in this civil rights action against Governor Lamont in his official capacity.[1] Compl., ECF No. 1.

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Upon review, the Court must dismiss a complaint, or any portion of a complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

The Court has thoroughly reviewed all factual allegations in the complaint and conducted an initial review of the allegations therein pursuant to 28 U.S.C. § 1915A.

**BACKGROUND**

---

[1] The Court may "take judicial notice of relevant matters of public record." *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012). The publicly available information on the Connecticut DOC website shows that Plaintiff was sentenced on December 2, 2014 to twenty-eight years of incarceration for manslaughter and has a maximum release date of December 28, 2038. http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=379048.

The Court gleans the following facts from the complaint, its attachments, and publicly available information on the Connecticut DOC and judicial branch websites.

Plaintiff was born on November 18, 1990.[2] He committed his crime and was arrested on August 24, 2011, and he was sentenced on December 2, 2014, after he accepted an offer to plead guilty to manslaughter in the first degree with a firearm.[3] Compl. at ¶ 19.

Effective October 1, 2023, Public Act 23-169 (Senate Bill 952) amended the Connecticut statute concerning inmate parole eligibility, section 53a-125a, by, inter alia, adding section 54-125a(g) to provide that individuals:

> convicted of one or more crimes committed while such person was under twenty-one years of age, who was sentenced on or before October 1, 2005, and who received a definite sentence or total effective sentence of more than ten years' incarceration for such crime or crimes committed on or before October 1, 2005, may be allowed to go at large on parole in the discretion of the panel of the Board of Pardons and Paroles for the institution in which such person is confined, provided (A) if such person is serving a sentence of fifty years or less, such person shall be eligible for parole after serving sixty per cent of the sentence or twelve years, whichever is greater, or (B) if such person is serving a sentence of more than fifty years, such person shall be eligible for parole after serving thirty years. Nothing in this subsection shall limit a person's eligibility for parole release under the provisions of subsections (a) to (f), inclusive, of this section if such person would be eligible for parole release at an earlier date under any of such provisions.
>
> (2) The board shall apply the parole eligibility rules of this subsection only with respect to the sentence for a crime or crimes committed while a person was under twenty-one years of age. Any portion of a sentence that is based on a crime or crimes committed while a person was twenty-one years of age or older, shall be subject to the applicable parole eligibility, suitability and release rules set forth in subsections (a) to (e), inclusive, of this section.

In October 2023, Plaintiff's request for a parole hearing was denied. A letter from a Parole Supervisor stated that to be eligible an inmate must meet the following criteria:

---

[2] *See* http://www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=379048.
[3] *See* Case Detail for NNH -CR11-0120901-T at https://www.jud2.ct.gov.

2

(1)"Offense date is between 18 and less than 21 years of age;" (2) "The eligible sentence is greater than ten (10) years in length (the offense occurring over the age of 18 and under the age of 21);" and (3) "the offense date **and** the sentence date occur <u>on or before</u> October 1, 2005." *See* Compl. at 25 (ex. B) (emphasis in original). The letter explained that Plaintiff's offense date and sentence date occurred after October 1, 2005, and he was not therefore eligible for parole even though his sentence was greater than ten years in length and he was under the age of 21 when he committed the offense. *Id*. The letter advised Plaintiff that he was eligible for discretionary parole on September 29, 2034. *Id.*

## DISCUSSION

Plaintiff claims violation of his rights under the Fourteenth Amendment Due Process and Equal Protection Clauses and the Eighth Amendment.

**Fourteenth Amendment Due Process**

Plaintiff claims that he now has a vested liberty interest in having his parole eligibility hearing after he served sixty percent of his sentence in light of the provisions for offenders under 21 years who committed crimes on or before October 1, 2005. *See* Conn. Gen. Stat. § 54-125a(g).

The Fourteenth Amendment provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Liberty interests may arise from either the Due Process Clause itself or "from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). In *Sandin v. Conner*, 515 U.S. 472 (1995), the Supreme Court recognized that "States may under certain circumstances create liberty interests which are protected by the Due Process Clause." *Id.* at 483-84.

But a prisoner has "no constitutional or inherent right ... to be conditionally released before the expiration of a valid sentence." *Greenholtz v. Inmates of Nebraska Penal & Correctional Complex*, 442 U.S. 1, 7 (1979). Thus, prisoners have no federal constitutional right to parole or a parole hearing. *See Pugliese v. Nelson*, 617 F.2d 916, 923 (2d Cir.1980) (lawfully imprisoned inmate does not have a protected liberty interest in being released on parole prior to the expiration of the term of his sentence unless that right is created under state law); *Hicks v. Lantz*, No. 3:08-CV-1012(MRK), 2009 WL 2869753, at *3 (D. Conn. Sept. 1, 2009).

A right to release on parole may be created, however, under state law where mandatory language affords inmates a protectable liberty interest in the Parole Board setting a parole date. *See Greenholtz*, 442 U.S. at 11-12 ("expectancy of release provided in this statute is entitled to some measure of constitutional protection"); *Boyd v. Comm'r of Correction*, 199 Conn. App. 575 (2020) (holding specific language of the statute—"requir[ing] that the board shall consider the [juvenile offender] for parole" and the board "*shall* hold a hearing to determine such person's suitability for parole release" in section 54-125a(f)—vested petitioner with a cognizable liberty interest in parole eligibility status).[4]

But the Connecticut parole statute does not create a protected liberty interest in parole eligibility for non-juvenile inmates such as Plaintiff (who was not under 18 at the time he committed his offense). *See Green v. Martin*, 224 F. Supp. 3d 154, 177 (D. Conn. 2016) ("the

---

[4] Section 54-125(a)(f)(1) states that "a person convicted of one or more crimes committed while such person was under eighteen years of age, who is incarcerated on or after October 1, 2015, and who received a definite sentence or total effective sentence of more than ten years for such crime or crimes prior to, on or after October 1, 2015, may be allowed to go at large on parole in the discretion of the panel of the Board of Pardons and Paroles for the institution in which such person is confined, provided (A) if such person is serving a sentence of fifty years or less, such person shall be eligible for parole after serving sixty per cent of the sentence or twelve years, whichever is greater, or (B) if such person is serving a sentence of more than fifty years, such person shall be eligible for parole after serving thirty years." Conn. Gen. Stat. Ann. § 54-125a(f)(1). Under Section 54-125a(f)(2), "[t]he board shall apply the parole eligibility rules of this subsection only with respect to the sentence for a crime or crimes committed while a person was under eighteen years of age." *Id.*

statute governing parole in Connecticut does not include mandatory language, and consequently does not create a protected liberty interest in parole"); *Hicks*, 2009 WL 2869753, at *4 (Connecticut statutes do not create a protected liberty interest in parole for Connecticut inmates). As no language in section 54-125a affords Plaintiff an expectancy to have his parole eligibility hearing provided under the terms set forth in section 54-125a(g), Plaintiff's claim of Fourteenth Amendment Due Process violation for failure to provide him a parole eligibility hearing after he served sixty percent of his sentence must be dismissed as not plausible. *See* 28 U.S.C. § 1915A(b).

**Eighth Amendment**

Plaintiff claims violation of his right to be free from cruel and unusual punishment under the Eighth Amendment due to a failure to provide him with a parole hearing after he served sixty percent of his sentence.

A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment when the official's action involves the "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (citation omitted). To succeed on an Eighth Amendment claim, a plaintiff must show (1) "a deprivation that is objectively, sufficiently serious" and (2) "a sufficiently culpable state of mind on the part of the defendant official." *Gaston v. Coughlin*, 249 F.3d 156, 164 (2d Cir. 2001). The deprivations must be examined in light of contemporary standards of decency to determine whether they are sufficiently serious. *See Helling v. McKinney*, 509 U.S. 25, 35–36 (1993); *see also Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Subjectively, the plaintiff must show that a defendant acted with knowledge that an inmate "face[s] a substantial risk of serious harm and disregards that risk by failing to take reasonable measure to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994).

Here, Plaintiff has not alleged any facts to suggest that he is subject to an Eighth Amendment violation while in DOC custody. And "because he has no constitutional or inherent right to be released prior to the expiration of his sentence, there is nothing cruel or unusual about requiring him to serve the full term of his sentence" or not to provide him a parole eligibility hearing after he has served sixty percent of his sentence. *See Green v. Martin*, 224 F. Supp. 3d 154, 177 n. 12 (D. Conn. 2016); *see also Smith v. U.S. Parole Comm'n*, 814 F. Supp. 246, 248 (D. Conn. 1993) (concluding "a prisoner has no constitutional or inherent right to be released prior to the expiration of a valid sentence" and therefore "there is nothing cruel or unusual about requiring him to serve his minimum term before giving him a parole hearing."). Accordingly, the Court must dismiss Plaintiff's Eighth Amendment claim as not plausible. *See* 28 U.S.C. § 1915A(b).

**Fourteenth Amendment Equal Protection**

Plaintiff claims that he is being treated differently than other inmates with lengthy sentences who (1) committed crimes while 21 but are eligible for parole hearings after serving sixty percent of their sentence or twelve years; and (2) committed crimes while they were under 18 prior to, on or after October 1, 2015, and are entitled parole hearings after serving sixty percent of their sentence or twelve years.

The Equal Protection Clause of the Fourteenth Amendment protects individuals from invidious discrimination. It does not mandate identical treatment for each individual or group of individuals. Instead, it requires that similarly situated persons be treated the same. *See City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439-40 (1985). To state an equal protection claim, a plaintiff must allege facts showing that: (1) he was treated differently from similarly situated individuals and (2) that the difference in or discriminatory treatment was based on

"'impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000) (quoting *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980)). Plaintiff has not alleged a plausible equal protection claim due to being treated differently from similarly situated inmates based any of these impermissible considerations.

But Plaintiff may still assert an equal protection violation on the basis of a theory that he has been irrationally singled out as a "class of one." *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601 (2008). Under a class of one theory, "the level of similarity" between Plaintiff and his comparators "must be extremely high." *Hu v. City of New York*, 927 F.3d 81, 92 (2d Cir. 2019) (internal quotation marks and citation omitted). For initial pleading purposes, Plaintiff plausibly alleges that he is being treated differently without a rational reason from other similarly situated inmates who are eligible earlier for parole hearings. The court will permit Plaintiff to proceed on his Fourteenth Amendment equal protection claim against Governor Lamont in his official capacity.

Plaintiff states that he seeks damages. But his request for money damages against the Connecticut state governor in his official capacity is barred by the Eleventh Amendment. *See, e.g. Kentucky v. Graham*, 473 U.S. 159, 169 (1985). Plaintiff may proceed, however, on his requests for injunctive relief against Governor Lamont in his official capacity because his complaint plausibly suggests that he is subject to an ongoing Fourteenth Amendment equal protection violation. *See Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 254-55 (2011) (citing *Ex parte Young*, 209 U.S. 123 (1908)).

Plaintiff's request for declaratory relief to state that his federal constitutional rights have been violated is not warranted.[5] If Plaintiff prevails on his equal protection claim, a judgment in his favor would serve the same purpose as a declaration that the defendant violated his constitutional rights. Thus, the Plaintiff's request for declaratory relief is not distinct from the relief sought in his section 1983 claims and is dismissed.

**ORDERS**

Consistent with the foregoing, the Court enters the following orders:

(1) Plaintiff may proceed on a Fourteenth Amendment Equal Protection Clause claim for injunctive relief against Governor Lamont in his official capacity.

Plaintiff's Fourteenth Amendment Due Process Clause and Eighth Amendment claims are DISMISSED as not plausible. Plaintiff's official capacity claims for monetary damages and a declaratory judgment are DISMISSED without prejudice.

(2) **The Clerk** shall prepare a summons form and send an official capacity service packet to the U.S. Marshal Service. The U.S. Marshal Service is directed to effect service of the complaint and this Order on Governor Lamont in his official capacity at the Office of the Attorney General, Mackenzie Hall, 165 Capitol Avenue, Hartford, CT 06106, within **twenty-one (21) day**s from the date of this order and to file a return of service within thirty (30) days from the date of this order.

(3) The clerk shall send a courtesy copy of the complaint and this Order to the DOC Office of Legal Affairs and to the Office of the Attorney General.

---

[5] To the extent Plaintiff seeks a declaratory judgment to declare a violation of his rights under the Connecticut Constitution, such claim is barred by the Eleventh Amendment. *Vega v. Semple*, 963 F.3d 259, 284 (2d Cir. 2020) ("a claim that state officials violated state law in carrying out their official responsibilities is a claim against the State that is protected by the Eleventh Amendment") (citing *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 121 (1984).

(4) The Defendant shall file a response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If the Defendant chooses to file an answer, Defendant shall admit or deny the allegations and respond to the cognizable claims recited above. The Defendant may also include any and all additional defenses permitted by the Federal Rules.

(5) Discovery, according to Federal Rules of Civil Procedure 26-37, shall be completed within **six months (180 days)** from the date of this Order. Discovery requests need not be filed with the Court.

(6) The parties must comply with the District of Connecticut "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the Court. The Order can also be found at http://ctd.uscourts.gov/administrative-standing-orders.

(7) All motions for summary judgment shall be filed within **seven months (210 days)** from the date of this Order.

(8) According to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within **twenty-one (21) days** of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(9) If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that he MUST notify the Court. Failure to do so can result in the dismissal of the case. The plaintiff must give notice of a new address even if he is incarcerated. He should write "PLEASE NOTE MY NEW ADDRESS" on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If the plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of change of address. He should also notify the Defendant or defense counsel of his new address.

(10) The plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court. The plaintiff is advised that the Program may be used only to file documents with the court. Local court rules provide that discovery requests are not filed with the court. D. Conn. L. Civ. R. 5(f). Therefore, discovery requests must be served on the defendant's counsel by regular mail.

_____/s/_____
Michael P. Shea
United States District Judge

SO ORDERED this 2nd day of February 2024, at Hartford, Connecticut.