UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| SHAQUAN L. ARMOUR | : | CIVIL NO. 3:23-CV-01606 (MPS) |
| V. | : | |
| GOVERNOR LAMONT | : | APRIL 30, 2024 |

## MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS

Governor Lamont hereby submits this Memorandum of Law in support of his Motion to Dismiss. As detailed herein, the sole remaining claim in Plaintiff's Complaint, a Fourteenth Amendment Equal Protection Clause claim seeking injunctive relief, should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction and pursuant Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Accordingly, for the reasons set forth below, Governor Lamont's Motion to Dismiss should be granted.

## I.  RELEVANT BACKGROUND & FACTUAL ALLEGATIONS

### A.  Relevant Factual Allegations.

As set forth in the Court's February 2, 2024 Initial Review Order ("IRO"), (ECF No. 10), the following factual allegations are relevant to the instant motion:

> Plaintiff was born on November 18, 1990. He committed his crime and was arrested on August 24, 2011, and he was sentenced on December 2, 2014, after he accepted an offer to plead guilty to manslaughter in the first degree with a firearm. Compl. at ¶ 19.

> Effective October 1, 2023, Public Act 23-169 (Senate Bill 952) amended the Connecticut statute concerning inmate parole eligibility, section 53a-125a, by, inter alia, adding section 54- 125a(g) to provide that individuals:

>> convicted of one or more crimes committed while such person was under twenty-one years of age, who was sentenced on or before October 1, 2005, and who received a definite sentence or total effective sentence of more than ten years' incarceration for such crime or crimes committed on or before October 1, 2005, may be allowed to go at large on parole in the discretion of the panel of the Board of Pardons and Paroles for the institution in which such person is

confined, provided (A) if such person is serving a sentence of fifty years or less, such person shall be eligible for parole after serving sixty per cent of the sentence or twelve years, whichever is greater, or (B) if such person is serving a sentence of more than fifty years, such person shall be eligible for parole after serving thirty years. Nothing in this subsection shall limit a person's eligibility for parole release under the provisions of subsections (a) to (f), inclusive, of this section if such person would be eligible for parole release at an earlier date under any of such provisions.

(2) The board shall apply the parole eligibility rules of this subsection only with respect to the sentence for a crime or crimes committed while a person was under twenty-one years of age. Any portion of a sentence that is based on a crime or crimes committed while a person was twenty-one years of age or older, shall be subject to the applicable parole eligibility, suitability and release rules set forth in subsections (a) to (e), inclusive, of this section.

In October 2023, Plaintiff's request for a parole hearing was denied. A letter from a Parole Supervisor stated that to be eligible an inmate must meet the following criteria: (1)"Offense date is between 18 and less than 21 years of age;" (2) "The eligible sentence is greater than ten (10) years in length (the offense occurring over the age of 18 and under the age of 21);" and (3) "the offense date and the sentence date occur **on or before** October 1, 2005." See Compl. at 25 (ex. B) (emphasis in original). The letter explained that Plaintiff's offense date and sentence date occurred after October 1, 2005, and he was not therefore eligible for parole even though his sentence was greater than ten years in length and he was under the age of 21 when he committed the offense. *Id*. The letter advised Plaintiff that he was eligible for discretionary parole on September 29, 2034. *Id*

(ECF No. 10, pp. 2-3).

## B. Relevant Procedural Background.

Plaintiff commenced the instant action, *pro se*, on December 8, 2023.  (ECF No. 1).  Plaintiff's Complaint asserted various constitutional claims against Governor Lamont in his official capacity, including claims that his rights were violated under the Fourteenth Amendment Due Process and Equal Protection Clauses, as well as under the Eighth Amendment.  (*Id*. at ¶¶ 5, 16-26); *see also* (ECF No. 10, pp. 1, 3-8).

Following the Court's IRO, all claims and requests for relief were dismissed except for the following claim: Plaintiff's Fourteenth Amendment Equal Protection Clause claim for injunctive relief against Governor Lamont in his official capacity. *See* (ECF No. 10, pp. 3-8). More specifically, the Court permitted this claim to proceed under a "class of one" theory of liability. (*Id.* at 7). This claim arises from Plaintiff's allegations that due to the amendment to Conn. Gen. Stat. § 54-125a, "he is being treated differently than other inmates with lengthy sentences who (1) committed crimes while 21 but are eligible for parole hearings after serving sixty percent of their sentence or twelve years; and (2) committed crimes while they were under 18 prior to, on or after October 1, 2015, and are entitled to parole hearings after serving sixty percent of their sentence or twelve years." (*Id.* at 6). Governor Lamont now moves to dismiss this sole remaining claim for the reasons below.

## II.     LEGAL STANDARD

### A. A motion to dismiss may be granted at any time.

The Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915, requires that "the court *shall dismiss* the case *at any time* if the court determines that . . . the action . . . fails to state a claim on which relief may be granted; or seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B) (emphasis added); *see also Atkinson v. Bohn*, 91 F.3d 1127, 1128-29 (8th Cir. 1996) (dismissing case for failure to state a claim pursuant to 28 U.S.C. § 1915(e) after amended complaint filed). The Second Circuit has approved of *Atkinson*, *supra*, and has acknowledged that the PLRA's provisions concerning *sua sponte* dismissals for failure to state a claim upon which relief can be granted are quite liberal but should be reviewed under a de novo review standard. *Liner v. Goord*, 196 F.3d 132, 134 (2d Cir. 1999).

Moreover, it is worth noting that "this court is not bound by its decision in its Initial Review Order . . . that [Plaintiff] had stated a plausible claim" as "[a]lthough initial review orders may dismiss claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a district court may not be able to make that determination without the benefit of an adversarial presentation." *Smalls v. Wright*, No. 3:16-CV-2089 (JCH), 2017 U.S. Dist. LEXIS 127743, at *11-12 (D. Conn. Aug. 11, 2017) (internal quotation marks & citation omitted); *see also Davis v. Furtick*, No. 3:21-CV-648 (SVN), 2022 U.S. Dist. LEXIS 152830, at *10 (D. Conn. Aug. 25, 2022) (citing cases).

### B. Rule 12(b)(1).

Fed. R. Civ. P. 12(b)(1) provides for dismissal of a case or claim for lack of subject matter jurisdiction. "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Eliahu v. Jewish Agency for Israel*, 919 F.3d 709, 712 (2d Cir. 2019) (per curiam) (citation omitted). "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Purugganan v. AFCF Franchising, LLC*, No. 3:20-CV-360 (KAD), 2021 U.S. Dist. LEXIS 34284, at *3 (D. Conn. Feb. 24, 2021) (citations omitted).

"[T]he party asserting subject matter jurisdiction 'has the burden of proving by a preponderance of the evidence that is exists.'" *Tandon v. Captain's Cove Marina of Bridgeport, Inc.,* 752 F.3d 239, 243 (2d Cir. 2014) (citation omitted). "If subject matter jurisdiction is lacking, the action must be dismissed." *Cavanaugh v. Geballe*, No. 3:20-CV-981 (KAD), 2021 U.S. Dist. LEXIS 37050, *4 (D. Conn. Mar. 1, 2021).

Ripeness[1] implicates this Court's subject matter jurisdiction. *See, e.g., Brady v. Basic Research, L.L.C.,* 101 F. Supp.3d 217, 227 (E.D.N.Y. 2015) (citing *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011)); *Phila. Indem. Ins. Co. v. Enter. Builders*, No. 3:20-CV-56 (KAD), 2021 U.S. Dist. LEXIS 32159, at *4 (D. Conn. Feb. 22, 2021). Likewise, a claim of Eleventh Amendment immunity "goes to the jurisdiction of the federal court . . . ." *NAACP v. Merrill*, 939 F.3d 470, 475 (2d Cir. 2019) (citation omitted).

## C. Rule 12(b)(6).

Fed. R. Civ. P. 12(b)(6) provides for dismissal for failure to state a claim upon which relief can be granted. To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks & citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

---

[1] As detailed further *infra* pp. 8-9, there are two forms of ripeness: constitutional ripeness and prudential ripeness. *Am. Sav. Bank, FSB v. UBS Fin. Servs.,* 347 F.3d 436, 439 (2d Cir. 2003). While the absence of prudential ripeness does not itself deprive the court of subject matter jurisdiction, this Court should analyze Governor Lamont's ripeness argument, including on prudential grounds, under Rule 12(b)(1) as the prudential ripeness inquiry informs the court whether it should exercise jurisdiction in a particular case. *See In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 725 F.3d 65, 110 (2d Cir. 2013).

Indeed, courts within the Second Circuit have considered prudential ripeness arguments in terms of subject matter jurisdiction, including on a motion to dismiss under Rule 12(b)(1). *See e.g., High Mt. Corp. v. MVP Health Care, Inc.,* 416 F. Supp.3d 347, 351-54 (D. Vt. 2019); *New York v. United States HHS*, No. 07-CIV-8621 (PAC), 2008 U.S. Dist. LEXIS 101064, at *25-40, 49-50 (S.D.N.Y. Dec. 15, 2008); *Jurist v. Long Island Power Auth.,* No. 19-CV-3762 (MKB) (LB), 2021 U.S. Dist. LEXIS 4122, at *15-23 (E.D.N.Y. Jan. 6, 2021). Moreover, the prudential ripeness doctrine has been considered "[a]kin to discretionary doctrines of abstention [,]" *Alliance of Auto. Mfrs. v. Currey*, 984 F. Supp.2d 32, 45 (D. Conn. 2013), and courts within this circuit have analyzed abstention under Rule 12(b)(1). *See e.g., High Mt. Corp.,* 416 F. Supp.3d at 351; *Wilmington Trust v. Estate of McClendon*, 287 F. Supp.3d 353, 360 (S.D.N.Y. 2018); *Stahl York Ave. Co., LLC. v. City of New York*, No. 14-CIV-7665 (ER), 2015 U.S. Dist. LEXIS 66660, at *20-21 (S.D.N.Y. May 21, 2015), *aff'd*, 641 Fed. App'x. 68 (2d Cir. 2016).

defendant is liable for the misconduct alleged." *Id.* In determining whether a complaint states a plausible entitlement to legal relief, the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences from those allegations in the light most favorable to the plaintiff. *See Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005).

This "plausibility standard" is guided by "[t]wo working principles." *Iqbal*, 556 U.S. at 678. First, the requirement that a court accept as true the allegations in a complaint "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). Second, to survive a motion to dismiss, the claim for relief alleged in the complaint must be plausible. *Iqbal*, 556 U.S. at 679. Determining whether a complaint states a plausible claim for relief is "a context specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

## III.    **ARGUMENT**

As set forth below, Plaintiff's Fourteenth Amendment Equal Protection Clause claim against Governor Lamont, his sole remaining claim, should be dismissed.

First, Plaintiff's equal protection claim should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction. Plaintiff's claim is premature and speculative and so, is not ripe for adjudication. Plaintiff's claim should further be dismissed for lack of subject matter jurisdiction as it is barred by the Eleventh Amendment because Governor Lamont is not the proper party for purposes of *Ex parte Young*.

Second, Plaintiff's claim should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a "class of one" equal protection claim. More specifically, Plaintiff's allegations fail to state a claim because (1) Plaintiff cannot be a "class of one" as he is being treated the same as his closest comparators, and (2) legislation, like Conn. Gen. Stat. § 54-125a, that creates classes of offenders distinguishable only by the date of their offense does not violate the Equal Protection Clause.

## A. The Court lacks subject matter jurisdiction over Plaintiff's equal protection claim and so, it must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

As detailed below, because Plaintiff's equal protection claim is not ripe for adjudication and because it is barred by the Eleventh Amendment, this Court lacks subject matter jurisdiction over Plaintiff's claim, and it must be dismissed.

### 1. Plaintiff's equal protection claim is premature and speculative, as even if the challenged section of the statute were removed, Plaintiff would not be eligible for a parole hearing until 2031.

To confer Article III standing, a Plaintiff must plead facts to show injury in fact, meaning he has "suffered an invasion of a legally protected interest" that is concrete and particularized and actual or imminent, not conjectural or hypothetical." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (internal quotation marks & citations omitted). For an injury to be considered "actual or imminent," it must be "certainly impending," or there must be "substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014). "Although imminence is concededly a somewhat elastic concept, it cannot be stretched beyond its purpose, which is to ensure that the alleged injury is not too speculative for Article III purposes--that the injury is *certainly* impending. Thus, we have repeatedly reiterated that "threatened injury must be *certainly impending* to constitute injury in fact, and that allegations of possible future injury are not sufficient."

*Clapper v. Amnesty International USA*, 568 U.S. 398, 409 (2013) (cleaned up, internal citations omitted, emphasis in original).

"Ripeness is a constitutional prerequisite to exercise of jurisdiction by federal courts." *Nutritional Health Alliance v. Shalala*, 144 F.3d 220, 225 (2d Cir. 1998) (citations omitted). "Ripeness is a term that has been used to describe two overlapping threshold criteria for the exercise of a federal court's jurisdiction." *In re MTBE Prods. Liab. Litig.*, 725 F.3d 65, 109 (2d Cir. 2013) (citations omitted). "The first such requirement – which we refer to as 'constitutional ripeness' – is drawn from Article III limitations on judicial power." *Id.* (citations omitted). "The second such requirement – which we refer to as 'prudential ripeness' – is drawn from prudential reasons for refusing to exercise jurisdiction." *Id.* at 110 (citations omitted). "Both constitutional ripeness and prudential ripeness 'are concerned with whether a case has been brought prematurely.'" *Id.* (quoting *Simmonds v. INS*, 326 F.3d 351, 357 (2d Cir. 2003)).

"The doctrine of constitutional ripeness 'prevents a federal court from entangling itself in abstract disagreements over matters that are premature for review because the injury is merely speculative and may never occur.'" *Id.* (quoting *Ross v. Bank of America, N.A. (USA)*, 524 F.3d 217, 266 (2d Cir. 2008)). "This aspect of the ripeness doctrine overlaps with the standing doctrine, 'most notably in the share requirement that the plaintiff's injury be imminent rather than conjectural or hypothetical.'" *Id.* (quoting *Ross*, 524 U.S. at 266). A claim is unripe if it depends on "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580-81 (1985) (citation omitted).

"The doctrine of prudential ripeness 'constitutes an important exception to the usual rule that where jurisdiction exists a federal court must exercise it,' and allows a court to determine 'that the case will be better decided later.'" *In re MTBE Prods. Liab. Litig.*, 725 F.3d at 110 (quoting *Simmonds*, 326 F.3d at 357).   As it pertains to "prudential ripeness" the Second Circuit has explained that:

> When a court declares that a case is not prudentially ripe, it means that the case will be better decided later and that the parties will not have constitutional rights undermined by the delay.  It does not mean that the case is not a real or concrete dispute affecting cognizable current concerns of the parties within the meaning of Article III.  Of course, in deciding whether "better" means later, the court must consider the likelihood that some of the parties will be made worse off on account of the delay.  But that, and its degree, is just one-albeit important-factor the court must consider.  Prudential ripeness is, then, a tool that court may use to enhance the accuracy of their decisions and to avoid becoming embroiled in adjudications that may later turn out to be unnecessary or may require premature examination of, especially, constitutional issues that time may make easier or less controversial.

*Am. Sav. Bank,* 347 F.3d at 439-40 (citation omitted).   Determining whether a claim is prudentially ripe involves two inquiries: "(1) whether an issue is fit for judicial decision and (2) whether and to what extent the parties will endure hardship if decision is withheld." *Id*. at 440 (quoting *Simmonds*, 326 F.3d at 359).   The  fitness inquiry "is concerned with whether the issues sought to be adjudicated are contingent on future events or may never occur[,]" *id*., and the hardship inquiry examines "whether and to what extent the parties will endure hardship if the decision is withheld." *Simmonds*, 326 F.3d at 359.

Here, application of these principles compels the conclusion that Plaintiff's instant claim is not constitutionally or prudentially ripe, and therefore, must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).  Even if Plaintiff were successful in this litigation and the restriction that limits the effects of PA 23-169 to offenses occurring prior to 2005 were removed, Plaintiff would still not be eligible for parole until September 2031.  Indeed,

Plaintiff was sentenced on December 2, 2014 to 28 years' incarceration,[2] and if he were treated the same as those individuals whose convictions predated October 1, 2005, he would have to serve 60% of his sentence before he was eligible for parole. 60% of his sentence runs on or about September 16, 2031. There is no way to know if the laws will be the same in seven years as they are presently, or even if Plaintiff will still be incarcerated at that time. As a result, Plaintiff's claim is unripe and "premature for review because the injury is merely speculative and may never occur." *In re MTBE Prods. Liab. Litig.*, 725 F.3d at 110 (citation omitted).

The Second Circuit reached a similar conclusion in *United States v. Balon*, 384 F.3d 38 (2d Cir. 2004). There, the Second Circuit held that an incarcerated plaintiff's challenge to some of the special conditions of his parole, including special conditions pertaining to monitoring of his internet usage, was not ripe. *See id*. at 46-47 (noting that because the plaintiff would not be released under supervised release for some time, "it is impossible to evaluate at this time whether one method or another, or a combination of methods, will occasion a greater deprivation of his liberty than necessary in light of the special needs of his supervised release"). The Second Circuit also noted that there was "no substantial hardship to the parties that would preclude withholding of judicial consideration at this time," since other actions would be available to the prisoner to challenge the conditions of supervised release at the time that he was actually experiencing them. *Id*. at 46-47. Likewise, in this case, it is impossible to evaluate at this juncture what factors will affect Plaintiff's ability to obtain a parole hearing in 2031, including whether the law governing his parole hearing date will change or whether he

---

[2]  *See* http//www.ctinmateinfo.state.ct.us/detailsupv.asp?id_inmt_num=379048 (last accessed April 30, 2024); *see also* (ECF No. 10, p. 2).

would even be incarcerated at that point. Moreover, Plaintiff will suffer no substantial hardship by withholding judicial consideration at this time for many of the same reasons articulated by the Second Circuit in *Balon* and given the fact that Plaintiff would not even be eligible for a parole hearing until 2031.

For all these reasons, Plaintiff's equal protection claim is not ripe. Accordingly, the Court lacks subject matter jurisdiction over Plaintiff's claim, and it must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

**2. Plaintiff's claim is barred by the Eleventh Amendment because Governor Lamont is not a proper party for purposes of *Ex parte Young*.**

"The Eleventh Amendment bars suits against states and their officials unless the state consents to suit, Congress abrogates the state's immunity, or the case falls within the *Ex parte Young* exception." *NAACP v. Merrill*, 939 F.3d 470, 475 (2d Cir. 2019). The *Ex parte Young* exception "operates to end ongoing violations of federal law and vindicate the overriding federal interest in assuring the supremacy of the law . . . . A plaintiff may invoke this exception provided that his complaint (a) alleges an ongoing violation of federal law and (b) seeks relief properly characterized as prospective." *Id.* (citations and internal quotation marks omitted). After initial review by the Court, only a claim for injunctive relief against Governor Lamont in his official capacity remains part of this suit. *See* (ECF No. 10, p. 7). Plaintiff must, therefore, invoke the *Ex parte Young* exception to overcome Eleventh Amendment immunity. *See Ex parte Young*, 209 U.S. at 123. Governor Lamont, however, is not a proper party to this action for purposes of *Ex parte Young*, as further detailed below.

"*Ex parte Young* held that a suit to enjoin as unconstitutional a state official's action was not barred by the [Eleventh] Amendment. This holding was based on a determination

that an unconstitutional state enactment is void and that any action by a state official that is purportedly authorized by that enactment cannot be taken in an official capacity since the state authorization for such action is a nullity." *Papasan v. Allain*, 478 U.S. 265, 276 (1986). Accordingly, to fall within the exception the defendant state official "must have some connection with the enforcement of the act, or else it is merely making him a party as a representative of the state, and thereby attempting to make the state a party." *Ex parte Young*, 209 U.S. at 157; *see also Pennington Seed, Inc. v. Produce Exch.* No. 299, 457 F.3d 1334, 1342 (Fed. Cir. 2006) ("When a violation of federal law is alleged, as here, the state official whose actions violate that law is the rightful party to the suit and prospective injunctive relief can only be had against him.").

To satisfy the "connection" requirement, the state official must have both "a particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty" based on the conduct before the court. *Conn. Ass'n of Health Care Facilities, Inc. v. Rell*, No. 3:10-CV-136 (PCD), 2010 U.S. Dist. LEXIS 54649, at *15-16 (D. Conn. June 3, 2010). The *Ex parte Young* "exception only applies when the named defendant state officials have some connection with the *enforcement* of the act and 'threaten and are about to commence proceedings' to enforce the unconstitutional act." *Okpalobi v. Foster*, 244 F.3d 405, 416 (5th Cir. 2001) (emphasis added). When that willingness and connection to enforce is not present, it cannot be said that the official is "involved in an ongoing violation of federal law . . . ." *Goodspeed Airport, LLC v. East Haddam Inland Wetlands & Watercourses Comm'n*, 632 F. Supp. 2d 185, 188 (D. Conn. 2009). A plaintiff's failure to name a proper defendant that meets the connection

requirement is "fatal" to his claim. *HealthNow N.Y., Inc. v. New York*, 739 F. Supp. 2d 286, 295 (W.D.N.Y. 2010).

Plaintiff's allegations concerning Governor Lamont are contained entirely within paragraphs 13 and 23 of his Complaint, alleging that the Governor signed the bill that enacted the change to the parole eligibility, (ECF No. 1, ¶¶ 13, 23), and the Governor is named in what appears to be requests for injunctive relief, (*id.* at ¶¶ 30-34).[3]   The Governor does not have a role in granting parole, and his general constitutional duty to "take care that the laws be faithfully executed," Conn. Const. art. IV., § 12, cannot serve to invoke *Ex parte Young*.  Indeed, "courts in the Second Circuit have not extended the exception under *Ex parte Young* on the basis that a state official has a general duty to execute and enforce state laws." *Kuck v. Danaher*, 822 F. Supp. 2d 109, 142 (D. Conn. 2011); *Conn. Ass'n of Health Care Facilities, Inc.*, 2010 U.S. Dist. LEXIS 54649, at *16; *Klinger v. Connecticut*, No. 3:04-CV-1081 (MRK), 2004 U.S. Dist. LEXIS 24093, at *6-8 (D. Conn. Nov. 12, 2004).

A "governor does not meet this exception solely 'based upon the theory that [he or she], as the executive of the state, was, in a general sense, charged with the execution of all its laws.'" *Urso v. Lamont*, No. 3:20-CV-00529 (KAD), 2021 U.S. Dist. LEXIS 240005, at *16-17 (D. Conn. Dec. 15, 2021) (quoting *Hund v. Cuomo*, 501 F. Supp. 3d 185, 197 (W.D.N.Y. 2020) (quoting *Ex parte Young*, 209 U.S. at 157) (alterations in *Hund*))).  "Indeed, if a suit could be brought against a governor based upon his general duty to enforce the law alone, then 'the constitutionality of every act passed by the

---

[3] Plaintiff's Complaint, (ECF No. 1), does not contain a page eight, nor paragraphs 27-29, but the ECF applied pages numbers are sequential.  Paragraphs 30-34 seem to be requested relief, not allegations about Governor Lamont.  Regardless of the contents of the missing paragraphs, they cannot alter the analysis that the Governor is an improper defendant.

legislature could be tested by a suit against the governor' without limitation, a result which would, in effect, make the State a party to the suit and undermine the State's sovereign immunity." *Id.* (quoting *Ex parte Young*, 209 U.S. at 157); *see also HealthNow New York, Inc.*, 739 F. Supp. 2d at 294; *Children's Healthcare is a Legal Duty, Inc. v. Deters*, 92 F.3d 1412, 1416 (6th Cir. 1996) ("Holding that a state official's obligation to execute the laws is a sufficient connection to the enforcement of a challenged statute would extend *Young* beyond what the Supreme Court has intended and held.") (internal citations omitted).

Because Plaintiff's Complaint is devoid of allegations satisfying the enforcement connection requirement of *Ex parte Young*, his equal protection claim against Governor Lamont in his official capacity is barred by the Eleventh Amendment and must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

**B. Plaintiff's allegations fail to state a Fourteenth Amendment Equal Protection Clause claim and should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).**

Even if the Court finds that it has jurisdiction over Plaintiff's equal protection claim, this claim is still subject to dismissal, pursuant to Fed. R. Civ. P. 12(b)(6), as Plaintiff's allegations fail to state an equal protection claim.

To state a "class of one" equal protection claim, as Plaintiff attempts here, he must allege that "he was 'intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Green v. Semple*, 811 Fed. Appx. 706, 707 (2d Cir. 2020) (summary order) (quoting *Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). As further detailed below, Plaintiff fails to state such a claim because his allegations fail to establish that he is being treated differently than any other individual who is "*prima facie* identical" to him in all material respects. Plaintiff further fails to state

a claim because legislation that creates classes of offenders distinguishable only by the date of their offense do not violate the Equal Protection Clause.

1. **Plaintiff cannot be a "class of one" as his closest comparators are being treated the same as him.**

"[C]lass-of-one plaintiffs must show an *extremely high degree* of similarity between themselves and the persons to whom they compare themselves." *Clubside, Inc. v. Valentin*, 468 F.3d 144, 159 (2d Cir. 2006) (emphasis added) (citation omitted). "The similarly-situated comparator must be 'prima facie identical' to the plaintiff[,]'" *Green*, 811 Fed. Appx. at 707 (quoting *Hu v. City of New York*, 927 F.3d 81, 92 (2d Cir. 2019), and "must be similarly situated in all material respects." *Shumway v. United Parcel Service, Inc.*, 118 F.3d 60, 64 (2d Cir. 1997) (citation omitted). This extremely high degree of similarity is mandated in a class of one claim because "[t]he similarity and equal protection inquiries are . . . virtually one and the same in ... a 'class of one' case." *Neilson v. D'Angelis*, 409 F.3d 100, 105 (2d Cir. 2005), *overruled on other grounds by Appel v. Spiridon*, 531 F.3d 138 (2d Cir. 2008).

Here, the subsection of the statute that Plaintiff is challenging states, in part, that:

> Notwithstanding the provisions of subsections (a) to (f), inclusive, of this section, a person convicted of one or more crimes committed while such person was under twenty-one years of age, who was sentenced on or before October 1, 2005, and who received a definite sentence or total effective sentence of more than ten years' incarceration for such crime or crimes committed on or before October 1, 2005, may be allowed to go at large on parole in the discretion of the panel of the Board of Pardons and Paroles for the institution in which such person is confined, provided (A) if such person is serving a sentence of fifty years or less, such person shall be eligible for parole after serving sixty per cent of the sentence or twelve years, whichever is greater, or (B) if such person is serving a sentence of more than fifty years, such person shall be eligible for parole after serving thirty years. Nothing in this subsection shall limit a person's eligibility for parole release under the provisions of subsections (a) to (f), inclusive, of this section if such person would be eligible for parole release at an earlier date under any of such provisions.

C. G. S. § 54-125a(g) (effective October 1, 2023). By its plain language then, this statute only applies to persons who committed a crime on or before October 1, 2005, was under 21 years of age at the time of conviction, and received a sentence of more than ten years.[4] Plaintiff committed the crime for which he is incarcerated on August 24, 2011 and was sentenced on December 2, 2014. (ECF No. 10, p. 2). He is in the same class as everyone else who committed a crime after October 1, 2005, was under 21 at the time of conviction, and received a sentence of more than ten years. It is obvious that many individuals under the age of 21 have been sentenced to terms of imprisonment longer than ten years since October 1, 2005. Each of those persons is being treated the same as Plaintiff under the challenged statute. Plaintiff is not being treated differently from his most close comparators; he is being treated exactly the same. He is not a class of one, he is in a class of many. "By definition, a class of one is not a class of many." *Cordi-Allen v. Conlon*, 494 F.3d 245, 254 (1st Cir. 2007).

Notably, and to that point, Plaintiff does not, nor could he plausibly, allege that he is being treated differently under the statute than anyone else who committed a crime after October 1, 2005, was under 21 at the time of conviction, and received a sentence of more than ten years. Courts within this District have rejected "class of one" equal protection claims for precisely this reason, finding that plaintiffs cannot establish that they are "similarly situated in all material respects" to their comparators. *See, e.g., Wright v. Malloy*, No. 3:16-CV-1179 (SRU), 2016 U.S. Dist. LEXIS 168165, at *13-14 (D. Conn. Dec. 6, 2016) (finding plaintiff who challenged parole eligibility statute that "denied him

---

[4] There are provisions and subsections of this statute that apply to an individual who committed crimes both before and after his or her 21st birthday, and the parole process, but they are not being challenged in this suit.

eligibility because he committed murder *after* 1981" was *not* "similarly situated" for equal protection purposes to "inmates who committed qualifying felonies, such as murder, *before* 1981") (emphasis added); *Green v. Semple*, No. 3:19-CV-410 (CSH), 2019 U.S. Dist. LEXIS 76507, at *15 (D. Conn. May 7, 2019) ("If one compares Plaintiff's circumstances with those of Johnny Johnson (inmate # 161684 at Osborn), Plaintiff's alleged comparator, they are not identical or similarly situated for purposes of application of Public Act 11-52, §§ 22 and 25, *due to the commission date of Johnson's offense*.") (emphasis added), *aff'd*, 811 Fed. Appx. 706 (2d Cir. 2020); *Bazemore v. Otero*, No. 3:19-CV-496 (JAM), 2020 U.S. Dist. LEXIS 36884, at *11 (D. Conn. Mar. 2, 2020) (rejecting "class of one" equal protection claim because, *inter alia*, "Bazemore does not allege any facts to show that he has been singled out for disparate treatment—that there are any other offenders who committed their crimes *before* the 2011 law that continue to receive its benefit") (emphasis in original). Likewise, here, Plaintiff does not point out any offender who was under 21 on October 1, 2005, received a sentence of more than ten years, and has been treated differently as to parole eligibility, nor can he. Without such a comparator, Plaintiff's claim is fatally flawed and must be dismissed.

**2. Legislation creating classes of offenders distinguishable only by their date of offense does not violate the Equal Protection Clause.**

Even if the Court finds that Plaintiff has plausibly alleged that he is being treated differently than those similarly situated, which he has not, Plaintiff's equal protection claim is still subject to dismissal because legislation creating classes of offenders distinguishable only by their date of offense does not violate the Equal Protection Clause.

Indeed, as Justice Oliver Wendell Holmes noted over a century ago, "the Fourteenth Amendment does not forbid statutes and statutory changes to have a

beginning and thus to discriminate between the rights of an earlier and later time." *Sperry & Hutchinson Co. v. Rhodes*, 220 U.S. 502, 505 (1911). And "[a]s the Supreme Court has recognized, 'most laws differentiate in some fashion between classes of persons,' and 'the Equal Protection Clause does not forbid classifications,' but 'simply keeps governmental decisionmakers from treating differently persons who in all relevant respects alike.'" *Bazemore*, 2020 U.S. Dist. LEXIS 36884, at *9 (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)); *see also New Orleans v. Dukes*, 427 U.S. 297, 304 n.5 (1976) ("Statutes create many classifications which do not deny equal protection; it is only invidious discrimination which offends the Constitution.").

As this Court noted in its IRO, so long as the classifications are supported by a "rational basis" then there is no equal protection violation. (ECF No. 10, p. 7); *see also Wright*, 2016 U.S. Dist. LEXIS 168165, at *12 (noting that where no suspect class or fundamental right are at issue, the court "must determine only whether there is a rational relationship between the state statute and a legitimate state objective") (citing *Heller v. Doe by Doe*, 509 U.S. 312, 319-20 (1993)). "Under the rational basis test, the 'statute is presumed to be valid and will be sustained if the classification is rationally related to a legitimate state interest.'" *Roe v. Marcotte*, 193 F.3d 72, 82 (2d Cir. 1999) (quoting *Bankers Life & Cas. Co. v. Crenshaw*, 486 U.S. 71, 81 (1988)) "The rationale for the statute need not be articulated by the legislature," as "[i]t is sufficient 'if there is any reasonably conceived state of facts that could provide a rational basis for the classification.'" *Wright,* 2016 U.S. Dist. LEXIS 168165, at *12 (quoting *Heller*, 509 U.S. at 320); *Spavone v. N.Y. State Dep't of Corr. Servs.,* 719 F.3d 127, 136-38 (2d Cir. 2013).

Applying rational basis, the Second Circuit and Circuit Courts across the country have found that legislation, like that challenged here, that creates "classes of offenders distinguishable by only the date of offense, conviction, plea, or sentencing" does not violate the Equal Protection Clause. *Doe v. Mich. Dep't of State Police*, 490 F.3d 491, 504 (6th Cir. 2007) (collecting cases); *see also Frazier v. Manson*, 703 F.2d 30, 36 (2d Cir. 1983) (upholding statute that conditioned ability to receive increased good time credits on sentencing date, thereby creating two classes of offenders: those sentenced prior to October 1, 1976 and those sentenced after that date), *cert. denied*, 464 U.S. 934 (1983); *Foster v. Washington State Bd. of Prison Terms & Parole*, 878 F.2d 1233, 1235 (9th Cir. 1989) ("There is no denial of equal protection in having persons sentenced under one system for crimes committed before July 1, 1984 and another class of prisoners sentenced under a different system.") (citation omitted); *Huggins v. Isenbarger*, 798 F.2d 203, 207 (7th Cir. 1986) ("It does not violate the equal protection clause to require people sentenced before 1977 [date of statutory change] to serve out their sentences under the system that was in place when they committed their crimes.").   And as the First and Seventh Circuits observed, "discrepancies among persons who committed similar crimes are inescapable whenever Congress raises or lowers the penalties for an offense" and "[m]ost often, the dividing line is the date of the crime."  *United States v. Goncalves*, 642 F.3d 245, 253 (1st Cir. 2011); *United States v. Speed*, 656 F.3d 714, 720 (7th Cir. 2011) (same and noting that "[s]omeone, in the end, will always be left behind to live with the earlier, harsher penalty, whenever Congress chooses to amend a sentencing statute" and that "[w]hatever arbitrariness there may be is therefore unavoidable").

Here, Plaintiff complains that the change to Conn. Gen. Stat. § 54-125a violates the Equal Protection Clause because it creates two classes of offenders based on the date of their offense; however, as just noted, that is precisely the type of equal protection claim that has been repeatedly rejected by courts across the country. In addition to the myriad of cases supporting dismissal of Plaintiff's instant equal protection claim, there are several rational bases supporting the distinction in the statute at issue.

For instance, the statute's offense date distinction is reasonably related to providing offenders who committed their crimes at a younger age (21 or under) and were sentenced to lengthy terms of incarceration under older (pre-2005) and harsher sentencing schemes, an earlier opportunity for parole release and thereby an ability to reduce or "improve" their term of incarceration. "Improvement in sentencing is a rational governmental purpose." *Foster*, 878 F.2d at 1235 (citing *Mistretta v. United States*, 488 U.S. 361 (1989); *see also Vickers v. Dzurenda*, 134 Nev. 747, 751 (2018) ("[E]stablishing the time an offender must spend in prison is a rational government purpose.") (citation omitted). It also serves the purpose of advancing public safety goals by providing offenders who are deemed to be rehabilitated and no longer a threat by the parole board, an opportunity to be released earlier, which serves the dual purpose of reducing the prison population of offenders who fit that criteria, while also ensuring that those offenders who do not meet that criteria remain incarcerated in accordance with their original sentences. *See Doe*, 490 F.3d at 505 (upholding legislation that "advance[s] public safety goals while simultaneously 'weeding out' those [offenders] who have been deemed least likely to reoffend"). And to the extent that Plaintiff argues that these rationales support extending the provision of the statute to him or to offenders who committed their crimes at later

dates than covered by the statute, such an argument does not alter the conclusion. "The legislature's 'gradual approach is not constitutionally impermissible.'" *Id.* (quoting *Dukes*, 427 U.S. at 305); *see also Hegney v. Vail*, 357 Fed. Appx. 1, 3 (9th Cir. 2009) ("[T]he state legislature had a rational basis to improve it sentencing scheme gradually.") (citing cases); *State v. Nguyen*, 185 Ariz. 151, 154 (1996) ("[I]t is rational for the government to tackle only the worst aspects of a problem" and "[g]overnments make such distinctions routinely – and constitutionally – in areas such as public assistance, where lines are drawn between those who are most needy and those who are less so.").

Moreover, there is no logical difference between Plaintiff's situation and the situation an offender faces after the legislature reclassifies a crime at a higher level with an increased sentence. A person sentenced after the change takes effect faces a longer sentence as compared to someone sentenced before the change, even thought their crimes may be essentially identical. Such a change does not create an equal protection violation, otherwise legislatures would never be able to change sentences for convictions of various crimes. Just as that is allowable, so too was the change the legislature made in this instance.

Accordingly, Plaintiff's equal protection claim must be dismissed.

## IV.     CONCLUSION

**WHEREFORE,** because Plaintiff's claims are premature, unripe, and barred by the Eleventh Amendment, and because   Plaintiff's allegations fail to state a class-of-one equal protection claim, Governor Lamont respectfully moves this Court to dismiss this action in its entirety.

DEFENDANT,
                            GOVERNOR LAMONT

                            WILLIAM TONG
                            ATTORNEY GENERAL

                BY:    _____/s/_____
                            Edward D. Rowley (#ct30701)
                            David C. Yale (#ct26912)
                            Assistant Attorneys General
                            165 Capitol Avenue
                            Hartford, CT 06106
                            Tel: (860) 808-5450
                            Fax: (860) 808-5591
                            E-Mail: Edward.Rowley@ct.gov
                                    David.Yale@ct.gov

## CERTIFICATION

I hereby certify that on the date first above, a copy of the foregoing was filed electronically. Notice of this filing was sent via U.S. Mail, First Class to the address below and will be sent by e-mail to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

        Shaquan L. Armour #379048
        Garner Correctional Institution
        50 Nunnawauk Road
        PO Box 5500
        Newtown, CT 06470

                        _____/s/_____
                        Edward D. Rowley
                        Assistant Attorney General